1  GREGORY NICOLAYSEN
   State Bar No. 98544
2  27240 Turnberry Lane, Suite 200
   Valencia, CA 91355
3  Cell: (818) 970-7247
   Fax: (661) 252-6023
4  Email: gregnicolaysen@aol.com

5  Counsel For Defendant,
   Mucktarr Kather Sei
6

7
8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
10

11  UNITED STATES OF AMERICA,     )   CASE NO. 2:21 - CR - 244(B) - AB
12                                )
                Plaintiff,        )   REPLY FILED BY DEFENDANT
13                                )   MUCKTARR KATHER SEI TO
                                  )   GOVERNMENT'S OPPOSITION TO
14                                )   MOTION FOR SEVERANCE OF
                                  )   DEFENDANTS
15  vs.                           )
                                  )
16                                )
                                  )
17                                )
                                  )
18  MIRELA TODOROVA, et. al.,     )   DATE: May 20, 2024
                                  )   TIME: 10:00 a.m.
19              Defendants        )   CTRM: The Hon. Andre Birotte, Jr.
                                  )
20                                )
                                  )
21                                )
                                  )
22  _____)

23  TO: UNITED STATES ATTORNEY E. MARTIN ESTRADA, AND ASSISTANT
24  UNITED STATES ATTORNEYS PATRICK CASTANEDA AND JASON PANG:
25
26      Defendant Mucktarr Kather Sei submits his Reply to the government's
27  opposition to his motion for an order severing him from co-defendant Mirela Todorova
28  and granting defendant Sei a separate trial from Todorova.  The government's
    opposition was filed under seal on April 30, 2024.

DATED: May 09, 2024           By:_____/S/_____

**GREGORY NICOLAYSEN**
**Counsel for Defendant,**
**Mucktarr Kather Sei**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

As discussed in detail in the original moving papers, defendant Mucktarr Sei requests severance from co-defendant Mirela Todorova based on Todorova's submission to the prosecution team of a series of typed narratives totaling over 250 pages which purport to detail the operation of the charged drug conspiracy but in a highly biased and self-serving manner that delegates principal blame to Mr. Sei. Indeed, a search of Mr. Sei's name in the PDF files containing the narratives shows that he appears close to 2,500 times.

As the narratives were apparently prepared by Ms. Todorova from MDC-LA as a pretrial detainee during the pendency of the charges in this case, they clearly do not qualify as co-conspirator statements. Moreover, Ms. Todorova was represented by defense counsel of record in this case during the time period in which she generated the narratives, which raises questions as to why the U.S. Attorney's Office handled the narratives in the manner it did – i.e., reading them and choosing to incorporate them into their case.

Government counsel has informed counsel for defendants Todorova and Sei that the U.S. Attorney's Office received the narratives by way of a third party in the community who was none other than Ms. Todorova's former cellmate at MDC-LA. From what defense counsel has been told, Ms. Todorova created the narratives on the MDC computer email system, Corrlinks, and sent the narratives to this individual in a succession of what must have been a huge volume of emails. The individual proceeded to compile the emails into word processing files that were converted to PDF and emailed to the government.

Upon receipt of the emails containing the narratives, the government should have sent them promptly to either a designated Taint Team, or to Ms. Todorova's counsel of record, without reading them. Instead of doing so, the government opted to read the narratives and ultimately decided to incorporate them into the government's case, with the stated intention of offering them into evidence against both defendant Todorova and Sei at a joint trial.

The government's actions certainly raise questions that warrant an evidentiary hearing before this Court to inquire into both the circumstances giving rise to the government's acquisition of the narratives; and the government's election to use them offensively as trial evidence at a joint trial. At the very least, Mr. Sei is entitled to be split off from Ms. Todorova so that he can safely go to trial without the narratives, while Ms. Todorova addresses the government's use of her narratives in her own separate trial.

To deflect attention away from the concerns raised by Mr. Sei's severance motion, the government's opposition trivializes the Confrontation Clause presented by the government's intention to offer the Todorova narratives into evidence at a joint trial, as well as the highly prejudicial impact on Mr. Sei at a joint trial. The government has chosen to take the dismissive position that the narratives do not raise <u>Bruton</u> / <u>Crawford</u> concerns and that any potential prejudice to Mr. Sei can be managed through a combination of redactions and a limiting instruction.

Not only is the government wrong on the law; its position masks an underlying strategy of convicting Mr. Sei through the convenient technique of using self-serving statements made by a co-defendant whom Sei's counsel cannot cross-examine – narratives that *exceed 250 pages* in which Ms. Todorova points the finger of blame at Mr. Sei *more than two thousand times*.[1]

---

[1] The narratives refer to defendant Mucktarr Sei as "Kather," which is his middle name, or "Kather Sei."

**It is deplorable that the government would even consider introducing these narratives into evidence at a joint trial. If the government wants to use these narratives against Ms. Todorova, then Mr. Sei must be granted a severance.**

## II.
## THE GOVERNMENT MISAPPLIES THE CRAWFORD STANDARD TO THE TODOROVA NARRATIVES

### A. The Todorova Narratives Are Testimonial Within The Crawford Standard

#### 1. The "Testimonial" Standard Under Crawford And Progeny

**The government incorrectly takes the position that the Todorova narratives are not testimonial. (Opp. at pages 19-20). In Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Consistent with the criteria for excluding statements enunciated under Crawford and its progeny, discussed below, the Todorova narratives qualify as testimonial statements by a non-testifying co-defendant that the government is clearly seeking to introduce for the truth of the matters asserted; and it is simply untenable to try and remedy prejudice to defendant Sei through redactions and limiting instructions.**

**Although the Court in Crawford declined to provide a comprehensive definition of the term "testimonial," the court provided the "formulations" of a "core class" of testimonial statements, which included "statements that were made under**

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52. The Crawford opinion described the class of testimonial statements covered by the Confrontation Clause as follows:

> Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, *or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial*. [Italics and Underlining Added].

Id., at 51-52. This framework remains in effect. E.g., Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309-10, 129 S. Ct. 2527, 2531 (2009)(quoting the above excerpt from Crawford).

Applying Crawford, subsequent U.S. Supreme Court opinions have developed a "primary purpose" test in assessing whether statements qualify as testimonial. Originally, the test evolved in the context of statements made to the police during interrogation or in emergency situations, as enunciated in Davis v. Washington and Hammon v. Indiana, 547 U.S. 813, 126 S. Ct. 2266 (2006):

> **Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.**

547 U.S. at 822.

The Supreme Court further expounded on the primary purpose test in Michigan v. Bryant, 562 U.S. 344, 131 S. Ct. 1143 (2011), which held that in applying the primary purpose test to determine whether a statement is testimonial, the trial court must *objectively* evaluate the circumstances in which the statement was made.

Like Davis, Bryant applied the primary purpose standard in the context of police questioning under emergency circumstances. In providing additional clarification with regard to what the Davis opinion meant by "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," 562 U.S. at 359, the Court in Bryant reiterated its view in Davis that, when "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause." 562 U.S. at 358.

Taking Davis a step further, the Court in Bryant emphasized that the trial court must *objectively* consider "all of the relevant circumstances(,)" 562 U.S. at 369, recognizing that "whether an ongoing emergency exists is simply one factor . . . that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." Id., at 366. *See,* United States v. Latu, 46 F.4th 1175, 1182 (9th Cir. 2022)("Crawford requires that we consider 'all of the relevant circumstances,'" citing Bryant, 562 U.S.

at 369).

The Bryant opinion explained the analysis as follows:

> The statements and actions of the parties must also be objectively evaluated. That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

Bryant, 562 U.S. at 360, 131 S. Ct. at 1156, quoted by the Ninth Circuit in United States v. Fryberg, 854 F.3d 1126, 1134-35 (9th Cir. 2017), and United States v. Rojas-Pedroza, 716 F.3d 1253, 1267 (9th Cir. 2013).  Bryant further explains that the objective focus in the primary purpose test is the ultimate use of evidence at trial:

> In the end, the question is whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.

Bryant, 562 U.S. at 358, quoted in Ohio v. Clark, 576 U.S. 237, 245, 135 S. Ct. 2173, 2180 (2015)(held that child's statements about abuser were related to emergency of protecting the child and therefore non-testimonial); Crawford, 541 U.S. at 51-52 (A statement is testimonial if it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.").

The Supreme Court subsequently extended the primary purpose test to documents, which brings the doctrine of testimonial statements closer in line with the circumstances present in this case.  In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), the Court applied Crawford in finding that certain forensic

affidavits qualified as testimonial statements as they were "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" Id. at 311, quoting Crawford, *supra*, at 52, thereby holding that the trial court had committed reversible error in admitting the affidavits without proof of witness unavailability and a prior opportunity to cross examine. Id. at 329.  The majority opinion in Melendez-Diaz concluded as follows:

> This case involves little more than the application of our holding in Crawford v. Washington [citation omitted].  The Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error. We therefore reverse the judgment of the Appeals Court of Massachusetts and remand the case for further proceedings not inconsistent with this opinion.

Melendez-Diaz, 557 U.S. at 329.

The analysis in Melendez-Diaz was later expanded by the Supreme Court in Bullcoming v. New Mexico, 564 U.S. 647 (2011), where the Court reversed a conviction on the ground that Crawford warrants the exclusion of a laboratory report that was introduced into evidence through the testimony of a substitute lab analyst but not the forensic analyst who prepared the report.  In so holding, the Supreme Court observed that "[a] document created solely for an 'evidentiary purpose,' Melendez-Diaz clarified, made in aid of a police investigation, ranks as testimonial." Melendez-Diaz, 557 U.S. at 311; Bullcoming, 564 U.S. at 664.

## 2. The Todorova Narratives Qualify As Testimonial Statements

The Confrontation Clause analysis here as applied to the Todorova narratives falls squarely within the testimonial framework enunciated by Crawford and subsequent cases. The "formulations" of a "core class" of testimonial statements enunciated in Crawford include "confessions" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52. This standard clearly applies here. Ms. Todorova generated a veritable treatise on how the conspiracy charged in Count One operated – indeed from the highly self-serving, biased perspective of her own world view – that was undoubtedly aimed at incriminating defendant Sei at trial. It bears repeating that the 250+ pages of narratives collectively reference Mr. Sei well over 2,000 times.

The government's stated intention to use these narratives at trial confirms that they were made under circumstances that would lead an objective witness, namely the law enforcement members of the prosecution team, to believe that the narratives would be available for use at a later trial. No doubt the AUSAs on this case intend to have a law enforcement witness testify as to selected excerpts from the narratives.

In sending the narratives to the government, Ms. Todorova's obvious intention was to establish or prove past events that are relevant to this criminal prosecution. Davis, 547 U.S. at 822; Ohio v. Clark, 576 U.S. 237, 244 (2015) (quoting Davis). The narratives are not merely story telling for its own sake. Ms. Todorova clearly created them for an evidentiary purpose to aid the prosecution, which places the statements squarely in the category of testimonial. Melendez-Diaz, 557 U.S. at 311; Bullcoming, 564 U.S. at 664. Viewed objectively in light of all the circumstances, the "primary purpose" of the narratives was to create an out-of-court substitute for trial testimony. Bryant, 562 U.S. at 358,

By affirming its intention to use these narratives at trial in its opposition to Mr. Sei's severance motion, the government is admitting that indeed, the testimonial standards have been satisfied.  Accordingly, this Court should grant defendant Sei's motion for severance, whereby the government can introduce the narratives as to Ms. Todorova in her separate trial without prejudice to Mr. Sei.

### III.
### THE GOVERNMENT IS CLEARLY SEEKING TO OFFER TODOROVA'S HIGHLY BIASED, SELF-SERVING NARRATIVES INTO EVIDENCE FOR THE TRUTH OF THE MATTERS ASSERTED

The government cannot with a straight face suggest that it is only offering the Todorova narratives into evidence against defendant Sei under a hearsay exception. Reading the Confrontation Clause in this "implausible" manner, Crawford, 541 U.S. at 52, would make the right to confrontation easily erasable.  *See* Davis, 547 U.S. at 830-831 (Thomas, J., concurring in judgment in part and dissenting in part); Bullcoming, 564 U.S. at 664.  Moreover, Crawford recognized that "the Framers" did not "leave the Sixth Amendment's protection to the vagaries of the rules of evidence," 541 U.S. at 61, cited in United States v. Latu, 46 F.4th 1175, 1182 (9th Cir. 2022).

Beyond the Confrontation Clause violations already addressed is the lack of trustworthiness built into the very fabric of the narratives.  Without question, the government wants the jury to accept as true the voluminous assertions contained in the narratives and in so doing, convict both defendants.  But these are in fact self-serving statements aimed at minimizing Todorova's involvement in the charged conspiracy and greatly elevating that of defendant Sei, to the extent where Todorova grossly distorts reality in seeking to cancel out her own culpability in the hopes of leaving Mr.

Sei holding the bag, as the expression goes.

Accordingly, on evidentiary grounds separate and apart from Confrontation Clause factors, this Court should exclude the Todorova narratives in their entirety if a joint trial is conducted. Certainly, the balancing test under FRE 403 weighs strongly in favor of exclusion in a joint trial.

For the reasons discussed, Mr. Sei should be severed from Ms. Todorova.

## IV.
## NO AMOUNT OF REDACTIONS OR ANY LIMITING INSTRUCTIONS TO THE JURY CAN PROTECT MR. SEI FROM THE OVERWHELMING PREJUDICE INFLICTED BY THE TODOROVA NARRATIVES

The subject of redactions are not a Crawford issue. They come into play in the context of a Bruton violation. In this case, we have both issues. As discussed in the original moving papers, the "testimonial" standard applies to both Crawford and Bruton. In the Bruton analysis, the additional question of whether adequate redactions can safeguard against prejudice to Mr. Sei must be considered. However, Mr. Sei maintains that regardless of the Bruton considerations, the Todorova narratives cannot be admitted at a joint trial under Crawford, and that severance is therefore warranted.

Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968), held that a defendant is denied his/her Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. See Id. at 127-28. In Gray v. Maryland, 523 U.S. 185, 118 S. Ct. 1151

(1998), the Court held that a codefendant's redacted confession which replaced a defendant's proper name with an obvious indication of deletion, such as blank spaces or the word "delete," is not sufficient to comply with <u>Bruton</u>'s protective rule.  See 118 S. Ct. at 1157.  Specifically, the <u>Gray</u> Court found the redaction, "Me, deleted, deleted, and a few other guys," to be insufficient.  <u>Id</u>.

Following <u>Gray</u>, the Ninth Circuit held that a redaction replacing the defendant's name with "person X" is clearly impermissible, because the codefendant was pointing an accusatory finger at someone and it was not difficult for the jury to determine that that person was the other defendant on trial.  <u>United States v. Peterson</u>, 140 F.3d 819, 822 (9th Cir. 1998).  Likewise, in <u>United States v. Gillam</u>, 167 F.3d 1273 (9th Cir. 1999), the Ninth Circuit found the redactions to be a patent violation of <u>Gray</u>, observing that replacing the defendant A's name with "someone who worked at FDA . . . who was getting ready to retire" not only made it clear that nontestifying codefendant B was pointing an accusatory finger at someone else but also left little doubt for the jury that it was the defendant A.  <u>Id</u>. at 1277 (finding <u>Bruton</u> error harmless in light of strength of government's case).

Here, no redaction could possibly protect Mr. Sei from the obvious inference that he is the person being referenced in the Todorova narratives.  The references to Mr. Sei are far too numerous – over 2,000 – and the context in which Todorova refers to Mr. Sei make it abundantly clear that even if his name were removed, it would be obvious to the jury that Todorova is referring to him.  Any redacted portions of the Todorova narratives will inevitably be "directly accusatory," and thus fall within Bruton's rule, even if they did not specifically use a defendant's name, as the jury will have no difficulty seeing that Todorova could not possibly be referring to anyone other than Mr. Sei.  <u>Gray</u>, 523 U.S. at 194.

Likewise, a limiting instruction simply is not a viable option here.  First of all, while the Todorova narratives are confessions in the literal sense of speaking about the

operation of the conspiracy, they contain too many unsubstantiated assertions to possess the type of inherent trustworthiness that is typically associated with codefendant confessions within the Bruton context.

Moreover, the references to Mr. Sei are *too voluminous and too inculpatory* – pinning the blame for the drug operation entirely on him – to expect that the jury will simply put the narratives to the side as they conduct deliberations. The examples from the narratives that are quoted in the original moving papers, filed under seal, provide this Court with useful illustrations of the sheer impracticality of relying on limiting instructions in this case.

The government misplaces reliance on the recent Supreme Court opinion in Samia v. United States, 599 U.S. 635, 143 S. Ct. 2004 (2023). (Opp. at pages 21, 23). In Samia, the Court found that a redaction in a nontestifying codefendant's confession that substituted the term "other person" for the defendant's name satisfied Bruton's requirements. Samia, 143 S. Ct. at 2017. This substitution simply will not work with the Todorova narratives, as the *CONTEXT* in which the redaction would be used in this case will enable the jury to immediately infer that the reference to "other person" was Mr. Sei himself. The charged conspiracy is too small in numbers and the references to Mr. Sei are too specific to his alleged conduct to allow the "other person" reference to give Mr. Sei the anonymity needed to satisfy Bruton.

Therefore, Mr. Sei should be severed from Ms. Todorova.

## V.
## THE SELF-SERVING, BIASED NATURE OF THE TODOROVA NARRATIVES ALONE WARRANTS EXCLUSION FROM A JOINT TRIAL

Separate from the inquiry into the Confrontation Clause and Bruton issues

arising out of the Todorova narratives is the question of their reliability as hearsay statements within the framework of the Federal Rules of Evidence. While the government clearly takes the position that the narratives qualify as the admissions of a party opponent, namely defendant Todorova, the government is hard pressed to show that such statements are indeed admissions. The narratives are sheer distortions, providing Todorova's world view designed to minimize her connection to the charged conspiracy and significantly elevate that of Mr. Sei. These are not admissions in the classical sense of expressing a defendant's acknowledgement of their own misconduct. Rather, Todorova's narratives are all about providing the government with evidence against Mr. Sei by delegating blame away from herself, resulting in a gross distortion of reality which the government no doubt recognized when they made the decision to read the narratives.

In this context, the narratives are inherently unreliable and consequently irrelevant. They should not, therefore, be admitted into evidence under Federal Rule of Evidence 402, which states that "irrelevant evidence is not admissible." Federal Rule of Evidence 401 states that "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The gross distortions contained in the Todorova narratives contradict the standards enunciated in Rules 401 and 402, and should therefore be excluded.

Accordingly, before this Court even begins to address the Confrontation Clause and Bruton standards, the government should be required to establish why the Todorova narratives should even be considered at all by this Court, given their obvious bias in favor of Todorova. The government will fail in this endeavor, and this will properly short circuit the complex process of addressing Confrontation Clause and <u>Bruton</u> standards to statements that twist reality in favor of Ms. Todorova.

## VI.

## CONCLUSION

For the reasons discussed above and in the original moving papers, this Court should sever defendant Sei from defendant Todorova.  In a separate trial of Ms. Todorova alone, the government may wish to offer the narratives into evidence, which will not raise the Confrontation Clause and <u>Bruton</u> issues that are present in a joint trial.

DATED: May 09, 2024            By:_____/S/_____

**GREGORY NICOLAYSEN**
**Counsel for Defendant,**
**Mucktarr Kather Sei**