E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
PATRICK CASTAÑEDA (Cal. Bar No. 319431)
JASON C. PANG (Cal. Bar No. 296043)
SURIA M. BAHADUE (Cal. Bar No. 344369)
Assistant United States Attorneys
     1400/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0637/2652/5487
     Facsimile: (213) 894-0142/0141
     E-mail:    Patrick.Castaneda@usdoj.gov
                Jason.Pang@usdoj.gov
                Suria.Bahadue@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:21-CR-00244(B)-AB |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MUCKTARR KATHER SEI |
| v. | |
| MUCKTARR KATHER SEI, aka "Kather Sei," aka "Kat," | |
| Defendant. | |

    1.   This constitutes the plea agreement between MUCKTARR KATHER SEI, also known as "Kather Sei" and "Kat" ("defendant"), and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

## DEFENDANT'S OBLIGATIONS

2.  Defendant agrees to:

a.  Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to the single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with possession with intent to distribute a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

b.  Not contest facts agreed to in this agreement.

c.  Abide by all agreements regarding sentencing contained in this agreement.

d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.  Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.  Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.  Absent a government motion seeking removal of this obligation, recommend that defendant be sentenced to a term of imprisonment of no less than 60 months and not seek, argue, or

suggest in any way, either orally or in writing, that the Court impose a term of imprisonment below 60 months.

<u>THE USAO'S OBLIGATIONS</u>

3.  The USAO agrees to:

a.  Not contest facts agreed to in this agreement.

b.  Abide by all agreements regarding sentencing contained in this agreement.

c.  At the time of sentencing, move to dismiss the underlying First and Second Superseding Indictments as to defendant only.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.  At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.  Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, possession with intent to distribute a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), the following must be true: (1) defendant knowingly possessed a federally controlled substance; and (2) defendant possessed the substance with the intent to distribute it to another person.

1

PENALTIES

2      5.    Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of 21 U.S.C. §§ 841(a)(1),

4  (b)(1)(C) is: twenty years' imprisonment; a lifetime period of

5  supervised release; a fine of $1,000,000 or twice the gross gain or

6  gross loss resulting from the offense, whichever is greatest; and a

7  mandatory special assessment of $100.[1]

8      6.    Defendant understands that the statutory mandatory minimum

9  sentence that the Court must impose for a violation of 21 U.S.C.

10 §§ 841(a)(1), (b)(1)(C), is: a three-year period of supervised

11 release, and a mandatory special assessment of $100.

12     7.    Defendant understands that under 21 U.S.C. § 862a,

13 defendant will not be eligible for assistance under state programs

14 funded under the Social Security Act or Federal Food Stamp Act or for

15 federal food stamp program benefits, and that any such benefits or

16 assistance received by defendant's family members will be reduced to

17 reflect defendant's ineligibility.

18     8.    Defendant understands that supervised release is a period

19 of time following imprisonment during which defendant will be subject

20 to various restrictions and requirements.  Defendant understands that

21 if defendant violates one or more of the conditions of any supervised

22 release imposed, defendant may be returned to prison for all or part

23

24

25     [1] Defendant understands that the Court may order restitution to victim(s) of the offense to which defendant is pleading guilty and to persons other than the victim(s) of the offense to which defendant is

26 pleading guilty, including for any losses suffered as a result of: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in

27 connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to

28 this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.

of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and

1  that no one, including his attorney or the Court, can predict to an

2  absolute certainty the effect of his conviction on his immigration

3  status.  Defendant nevertheless affirms that he wants to plead guilty

4  regardless of any immigration consequences that his plea may entail,

5  even if the consequence is automatic removal from the United States.

6                              FACTUAL BASIS

7      11.  Defendant admits that defendant is, in fact, guilty of the

8  offense to which defendant is agreeing to plead guilty.  Defendant

9  and the USAO agree to the statement of facts provided below and agree

10  that this statement of facts is sufficient to support a plea of

11  guilty to the charge described in this agreement and to establish the

12  Sentencing Guidelines factors set forth in paragraph 14 below but is

13  not meant to be a complete recitation of all facts relevant to the

14  underlying criminal conduct or all facts known to either party that

15  relate to that conduct.

16         a.   Beginning on a date unknown and continuing to on or

17  about March 24, 2021, in Los Angeles County, within the Central

18  District of California, and elsewhere, defendant conspired and agreed

19  with co-conspirators Mirela Todorova ("Todorova"), Christopher Y.

20  Moreno Nunez ("Moreno Nunez"), Ashley Alicia Nicole Johnson

21  ("Johnson"), and others to knowingly and intentionally distribute and

22  possess with intent to distribute various controlled substances.

23  Defendant joined the agreement knowing of its purpose and intending

24  to help accomplish that purpose.

25         b.   As a member of the conspiracy, and in furtherance of

26  its objects, defendant worked several shifts per week for

27  approximately six hours per shift at Todorova's direction.  For that

28  work, Todorova paid defendant approximately $200 per shift, and

sometimes more, in cash or via peer-to-peer financial applications.

Defendant's work for Todorova included, among other things,

delivering various controlled substances, including but not limited

to cocaine, MDMA, and pills marketed as oxycodone, but which were

later determined to contain fentanyl, to Todorova's customers;

picking up such controlled substances from Todorova's suppliers for

further distribution to customers; assisting Todorova in making,

mixing, and packaging such controlled substances in Todorova's

apartment in Hollywood, California for further distribution to

customers; and helping Todorova coordinate with other drug delivery

drivers, including Moreno Nunez and Johnson, that Todorova hired to

distribute such controlled substances.

c.    To facilitate and monitor the distribution of such

controlled substances, Todorova gave defendant and other drug

delivery drivers, including Moreno Nunez and Johnson, various "work

phones," including a cellphone with a phone number ending in -7924,

that Todorova linked to the same iCloud account, identified as

johnmitchell123@mail.com (the "iCloud Account").  Todorova managed

and kept the iCloud Account on her personal cellphone that had a

phone number ending in -9519.  Defendant would also communicate with

Todorova, Moreno Nunez, Johnson, other co-conspirators, and customers

on defendant's personal cellphone that had a phone number ending in -

1328.  Furthermore, when Todorova traveled to Mexico or elsewhere,

Todorova would give defendant keys to Todorova's Hollywood apartment

so defendant could access the controlled substances and the "work

phones" to continue distributing those controlled substances to

Todorova's customers personally or through Todorova's other drug

delivery drivers, including Moreno Nunez and Johnson, by giving them

the "work phones" and controlled substances for their shifts. Meanwhile, Todorova continued to monitor customers' drug orders through the iCloud Account and direct defendant's distribution of controlled substances by, among other things, contacting defendant's personal cellphone directly. When some customers were unable to send messages to the iCloud Account, Todorova would facilitate direct contact between such customers and Todorova's drug delivery drivers, including defendant.

d. Between at least June 2020 through March 23, 2021, defendant communicated orally and via numerous text messages with Todorova, Moreno Nunez, and Johnson about drug trafficking; relayed customers' concerns about the authenticity of the purported oxycodone pills and other controlled substances to Todorova; picked up or delivered controlled substances at Todorova's direction; and otherwise communicated with Todorova, Moreno Nunez, and Johnson in furtherance of the conspiracy. For example, in furtherance of the conspiracy, defendant, Todorova, Moreno Nunez, and Johnson committed at least the following overt acts:

i. On October 9, 2020, in text messages, defendant told Todorova, "Check Zac Melrose. Saying the blues are fake," referring in coded language to oxycodone pills, and Todorova replied, "I did thanks."

ii. On or about November 9, 2020, in text messages, defendant asked Todorova if she had "more blues," which is coded language for oxycodone pills, and on or about November 10, 2020, Todorova replied, "Tomorrow."

iii. On or about November 15, 2020, after a drug customer, R.M., placed an order for drugs to Todorova's phone number,

8

defendant delivered approximately one gram of cocaine and more than one pill marketed as oxycodone, but which were later determined to contain fentanyl, to R.M. at R.M.'s home.

iv.  On or about November 16, 2020, after R.M. sent text messages to Todorova's phone number requesting a trade of the one gram of cocaine for five more oxycodone pills, defendant returned to R.M.'s home.  R.M. died of a drug overdose later that same day.

v.  On or about November 25, 2020, as directed by Todorova via text messages, defendant picked up 1,000 pills marketed as oxycodone, but a number of which were later determined to contain fentanyl, from Todorova's supplier, "Eric"; paid "Eric" approximately $5,000.00 for those pills; and confirmed receipt of those pills to Todorova.

vi.  On or about November 26, 2020, defendant coordinated his work schedule so that Moreno Nunez was delivering customer orders.  Later that same day, after a drug customer, victim B.L.H., placed an order for drugs to Todorova's phone number, Moreno Nunez delivered three pills marketed as oxycodone, but which were later determined to contain fentanyl, to victim B.L.H., who suffered a serious bodily injury, namely, a fentanyl overdose, shortly after ingesting some of those pills that same night.  Prior to delivering those three pills to victim B.L.H., Moreno Nunez obtained the pills from defendant, and defendant obtained the pills from Todorova or at her direction.

vii. On December 12, 2020, after a drug customer, victim S.L., placed an order for drugs to Todorova's phone number, defendant delivered four pills marketed as oxycodone, but which were later determined to contain fentanyl, to victim S.L., who suffered a

serious bodily injury, namely, a fentanyl overdose, shortly after
ingesting some of those pills that same night.  Prior to delivering
those four pills to victim S.L., defendant obtained the pills from
Todorova or at her direction.

viii.   On January 8, 2021, after a drug customer,
victim H.A., placed an order for drugs to Todorova's phone number,
Johnson delivered fifteen pills marketed as oxycodone, but which were
later determined to contain fentanyl, to victim H.A., who suffered a
serious bodily injury, namely, a fentanyl overdose, shortly after
ingesting some of those pills on or about January 9, 2021.  Prior to
delivering those fifteen pills to victim H.A., Johnson obtained the
pills from defendant, and defendant obtained the pills from Todorova
or at her direction.

e.   Defendant further admits and agrees that oxycodone and
fentanyl are Schedule II narcotic drug controlled substances.  At
several times between at least September 2020 through February 2021,
defendant possessed pills marketed as oxycodone, but which were later
determined to contain fentanyl, which defendant obtained from
Todorova or at her direction, with the intent to distribute them to
another person.  At all relevant times, defendant knew that the
substance in those pills he possessed was federally controlled.  In
particular:

i.   On or about November 10, 2020, Todorova gave
defendant keys to Todorova's Hollywood apartment so defendant could
access Todorova's various controlled substances, including but not
limited to cocaine, MDMA, and pills marketed as oxycodone, but which
were later determined to contain fentanyl, for further delivery of

such controlled substances to Todorova's drug customers while
Todorova traveled to Mexico.

ii. On or about November 15 and 16, 2020, in Los
Angeles County, defendant possessed pills marketed as oxycodone, but
which were later determined to contain fentanyl, that he obtained
from Todorova or at her direction. After victim R.M. placed an order
for drugs to Todorova's phone number, defendant distributed several
of those pills, along with approximately one gram of cocaine, to
victim R.M. R.M. was later found dead in the morning of November 16,
2020.

iii. On or about November 26, 2020, in Los Angeles
County, Moreno Nunez possessed at least three pills marketed as
oxycodone, but which were later determined to contain fentanyl, that
he obtained from defendant, who obtained such pills from Todorova or
at her direction. Moreno Nunez distributed those pills to victim
B.L.H., who ingested those pills supplied by Moreno Nunez, which
resulted in victim B.L.H.'s serious bodily injury, namely, a fentanyl
overdose, on or about November 26, 2020. But for victim B.L.H.'s
ingestion of the fentanyl in those pills distributed by Moreno Nunez
and obtained from defendant and Todorova, B.L.H would not have
suffered an overdose and serious bodily injury.

iv. On or about December 11, 2020, in Los Angeles
County, defendant obtained various controlled substances from
Todorova, including pills marketed as oxycodone, but which were later
determined to contain fentanyl, for further distribution to
Todorova's drug customers. In the early morning hours of December
12, 2020, defendant distributed at least four such pills to victim
S.L., who ingested some of those pills supplied by defendant, which

11

resulted in Victim S.L.'s serious bodily injury, namely, a fentanyl overdose, on or about that same day.  But for victim S.L.'s ingestion of the fentanyl in those pills distributed by defendant, S.L. would not have suffered an overdose and serious bodily injury.

v.  On or about January 8, 2021, in Los Angeles County, Johnson possessed at least fifteen pills marketed as oxycodone, but which were later determined to contain fentanyl, which she obtained from defendant, who obtained such pills from Todorova or at her direction.  Johnson distributed those pills to victim H.A., who ingested some of those pills supplied by Johnson, which resulted in victim H.A.'s serious bodily injury, namely, a fentanyl overdose, on or about January 9, 2021.  But for victim H.A.'s ingestion of the fentanyl in those pills distributed by Johnson, H.A. would not have suffered an overdose and serious bodily injury.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crime of conviction.

13.    Pursuant to U.S.S.G. §§ 1B1.2(a) and (c), the parties stipulate that defendant committed a separate violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (distribution of a Schedule II narcotic drug controlled substance resulting in serious bodily injury), in that, on or about December 12, 2020, defendant knowingly and intentionally distributed pills marketed as oxycodone, but which were later determined to contain fentanyl, the use of which resulted in the serious bodily injury, namely, a fentanyl overdose, of victim S.L., and that such overdose and serious bodily injury resulting from defendant's distribution of fentanyl constitutes a more serious offense than the offense of conviction for purposes of calculating the applicable Sentencing Guidelines offense level.  Accordingly, pursuant to U.S.S.G. §§ 2D1.1(a)(2), 1B1.2(a), and 1B1.2(c), the parties stipulate that the Court should calculate the Sentencing Guidelines as if defendant had been convicted of the offense described in this paragraph and apply a base offense level 38.  The parties further stipulate that application of such a base offense level, which is greater than the base offense level that would otherwise apply, is independently supported by U.S.S.G. § 5K2.1.  Defendant will not recommend, argue, or otherwise suggest that the Court impose a base offense level other than 38.

14.    Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:            38      U.S.S.G. § 2D1.1(a)(2)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a

13

1  career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's

2  offense level is so altered, defendant and the USAO will not be bound

3  by the agreement to Sentencing Guideline factors set forth above.

4     15.  Defendant understands that there is no agreement as to

5  defendant's criminal history or criminal history category.

6     16.  Defendant and the USAO reserve the right to argue for a

7  sentence outside the sentencing range established by the Sentencing

8  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

9  (a)(2), (a)(3), (a)(6), and (a)(7), except that defendant will not

10 recommend, argue, or otherwise suggest that the court impose a

11 sentence of less than 60 months in prison.

12                     WAIVER OF CONSTITUTIONAL RIGHTS

13    17.  Defendant understands that by pleading guilty, defendant

14 gives up the following rights:

15         a.   The right to persist in a plea of not guilty.

16         b.   The right to a speedy and public trial by jury.

17         c.   The right to be represented by counsel -- and if

18 necessary have the Court appoint counsel -- at trial.  Defendant

19 understands, however, that, defendant retains the right to be

20 represented by counsel -- and if necessary have the Court appoint

21 counsel -- at every other stage of the proceeding.

22         d.   The right to be presumed innocent and to have the

23 burden of proof placed on the government to prove defendant guilty

24 beyond a reasonable doubt.

25         e.   The right to confront and cross-examine witnesses

26 against defendant.

27

28

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

19.    Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is

within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

21. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations

16

will be tolled between the date of defendant's signing of this

agreement and the filing commencing any such action; and

(ii) defendant waives and gives up all defenses based on the statute

of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this

agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23.  Defendant agrees that if the count of conviction is

vacated, reversed, or set aside, or the death resulting enhancement

imposed by the Court to which the parties stipulated in this

agreement is vacated or set aside, both the USAO and defendant will

be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

24.  This agreement is effective upon signature and execution of

all required certifications by defendant, defendant's counsel, and an

Assistant United States Attorney.

### BREACH OF AGREEMENT

25.  Defendant agrees that if defendant, at any time after the

signature of this agreement and execution of all required

certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  All of defendant's obligations

are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have

cured a breach without the express agreement of the USAO in writing.

If the USAO declares this agreement breached, and the Court finds

such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

26. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein or in any contemporaneously signed and filed addenda or supplements, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

1            <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2         31.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 E. MARTIN ESTRADA
United States Attorney

9

10 *Jason C. Pang*                       7/23/2024

PATRICK CASTAÑEDA                   Date

11 JASON C. PANG
SURIA M. BAHADUE

12 Assistant United States Attorneys

13                                         07/23/2024

MUCKTARR KATHER SEI                 Date

14 Defendant

15                                         07/23 2024

GREGORY NICOLAYSEN                   Date

16 Attorney for Defendant
MUCKTARR KATHER SEI

17

18

19

20

21

22

23

24

25

26

27

28

1                          CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3     time to review and consider this agreement, and I have carefully and

4     thoroughly discussed every part of it with my attorney.  I understand

5     the terms of this agreement, and I voluntarily agree to those terms.

6     I have discussed the evidence with my attorney, and my attorney has

7     advised me of my rights, of possible pretrial motions that might be

8     filed, of possible defenses that might be asserted either prior to or

9     at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10    of relevant Sentencing Guidelines provisions, and of the consequences

11    of entering into this agreement.  No promises, inducements, or

12    representations of any kind have been made to me other than those

13    contained in this agreement or in an agreement signed by all parties

14    or on the record in court.  No one has threatened or forced me in any

15    way to enter into this agreement or in an agreement signed by all

16    parties or on the record in court.  I am satisfied with the

17    representation of my attorney in this matter, and I am pleading

18    guilty because I am guilty of the charge and wish to take advantage

19    of the promises set forth in this agreement, and not for any other

20    reason.

21    _____          _07-23-2024_____

22    MUCKTARR KATHER SEI                        Date
      Defendant

23

24

25

26

27

28

                                        22

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MUCKTARR KATHER SEI's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement or in an agreement signed by all parties or on the record in court; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

07-23-2024
Date

GREGORY NICOLAYSEN
Attorney for Defendant
MUCKTARR KATHER SEI

23